UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BROWN LUMBER AND BUILDING SUPPLY, INC., <br><br> Plaintiff <br><br> v. <br><br> BLUETARP FINANCIAL, INC., <br><br> Defendant | Case No. _____ |

CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

Plaintiff Brown Lumber and Building Supply, Inc., on behalf of itself and all others similarly situated, complains against Defendant BlueTarp Financial, Inc., as follows:

NATURE OF THE CASE

1. This case is about a receivables financing company, BlueTarp Financial, Inc. ("BlueTarp"), that deceived its clients by breaking promises and cheating them out of money owed to them.

2. BlueTarp provides accounts receivable financing, also known as factoring, to its over 2,000 clients across the nation.

3. BlueTarp clients are typically small businesses. They primarily consist of construction and building material supply companies.

4. In a typical transaction, BlueTarp's client ("Dealer"[1]) sells construction supplies to a local customer ("Customer"). BlueTarp finances the transaction for the Customer by paying the Dealer the transaction value of sale to a Customer, minus a transaction fee. BlueTarp then attempts to collect the full amount of the purchase price from the Customer through a pre-determined financing agreement.

5. As is common in the construction industry, Customers often return unused supplies they have purchased to Dealers and obtain a refund. As BlueTarp is no longer financing the amount of the returned supplies, the contract between BlueTarp and Dealers requires BlueTarp to return the transaction fee corresponding to the returned items.

6. For years, BlueTarp cheated its clients by failing to return the transaction fee for returned supplies. This failure not only breached the contract between BlueTarp and its clients, but it also allowed BlueTarp to unjustly enrich itself by wrongfully withholding millions of dollars in fees from clients across the nation.

---

[1] All references to "Dealers" refer to BlueTarp's clients, including Plaintiff and the putative class members.

7. In an effort to avoid liability for this breach, BlueTarp began returning the transaction fee for returned products to the Dealers on a monthly basis at some point in December 2016. BlueTarp did this, however, only on a prospective basis. It failed to return the millions of dollars in wrongfully withheld fees it had amassed prior to December 2016.

8. BlueTarp's conduct constituted a breach of contract and unjust enrichment. Its conduct harmed Plaintiff and each putative class member.

9. In this class action lawsuit, Plaintiff seeks to force BlueTarp to return these fees to putative class members across the nation.

10. This case presents a prototypical situation for class treatment. BlueTarp's conduct—including all relevant contracts, practices, conduct, representations, and omissions—is uniform among all class members. The application of the law to this common course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## PARTIES

11. Plaintiff Brown Lumber and Building Supply, Inc. is an Alabama corporation with its principal place of business in Shelby County, Alabama.

12. Defendant BlueTarp Financial, Inc., is a Delaware corporation with its principal place of business in Cumberland County, Maine. BlueTarp does business in this judicial district.

## JURISDICTION AND VENUE

13. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Plaintiff and BlueTarp are citizens of different states, and Plaintiff, on behalf of itself and the Class, seeks more than $5,000,000 in relief. Plaintiff has a good faith basis to believe that more than $5,000,000 is at issue in this case.

14. Venue in this case is proper in this Court under 28 U.S.C. § 1391. BlueTarp does business in this judicial district. BlueTarp has its corporate headquarters and executive team located in Portland, Maine. BlueTarp was subject to personal jurisdiction in this judicial district at the time this action was commenced and is deemed to reside in this judicial district.

15. Venue in this district best serves the convenience of parties and witnesses, including BlueTarp, which has it facilities here and does business here. Additionally, the contract at issue in this lawsuit has a choice of law provision that states it shall be governed by the laws of the State of Maine.

## APPLICABLE LAW

16. Maine law applies to all claims in this action.

17. The Purchase Account Agreement, which is the subject of the claims in this lawsuit, states that the agreement shall be governed and construed by the internal laws of the State of Maine.

## FACTS APPLICABLE TO ALL COUNTS

18. BlueTarp cheated its customers by failing to return money it collected from fees on items that were returned to Dealers. The fee at issue in this case is established in a written, pre-printed contract—which BlueTarp drafted—which is uniform in all relevant aspects.

19. This uniform contract, known as the Purchase Account Agreement ("PAA"), states that Dealer will pay BlueTarp a fee based on a percentage of the sales transaction to a Customer. The PAA refers to this fee as the "Discount Fee", but in other BlueTarp documents, including the Portfolio Conversion Credit Service Agreement and monthly invoices created by BlueTarp, this fee is also referred to as a "Service Fee" or a "Transaction Fee."[2] The amount of this fee is determined in a separate fee schedule. It typically ranges from 1.79% to 5.00%, depending on the creditworthiness of a particular Customer.

20. The PAA defines only two fees: a Service Fee and a Credit Transaction Fee. The Service Fee is a fee BlueTarp charges based on a percentage of the sales transaction to a Customer. The Credit Transaction Fee is a separate fee BlueTarp charges if the Dealer does not follow certain rules when processing a return.

---

[2] Service Fee is used in this Complaint to refer to this fee, which is also referred to as a Discount Fee in Paragraph 5(a) of the PAA.

21. There is no provision in the PAA that allows BlueTarp to keep the Service Fee when a product is returned to a Dealer by a Customer.

22. Specifically, the PAA states:

5. Fees.

(a) Dealer shall pay BlueTarp a fee which shall be deducted by Blue Tarp from the amount of each Account Sale hereunder. This fee, known as the "Discount Fee," shall be a percentage of the transaction value or other fee as set forth in the Fee Schedule provided by BlueTarp to Dealer from time to time. The "transaction value," as such term is used in this Section 5(a), shall mean the total amount charged for Product sold as reflected on the data transmitted to BlueTarp, including any taxes, if applicable.

(b) Dealer shall pay BlueTarp a fee which shall be added by Blue Tarp to the amount of each credit transaction Dealer processes for returned Product, unless Dealer follows the instructions set forth in the Rules for processing such transactions without incurring a fee. This fee, known as the "Credit Transaction Fee," shall be a percentage of the amount of the credit Dealer provides for the returned Product or other fee as set forth in the Fee Schedule provided by BlueTarp to Dealer from time to time.

23. There is no indication that BlueTarp has ever charged Plaintiff a Credit Transaction Fee due to the failure to follow certain instructions for processing a return.

24. It is common in the construction supply business for Customers to return purchased supplies to Dealers. When the supplies are returned, Dealers issue a credit to the Customers for the value of the returned supplies. When this occurs, BlueTarp is obligated to return the Service Fee by issuing

a "Service Fee Credit" to the Dealer because the Transaction Value is now zero and no Service Fee is owed.

25. Prior to November 2016, when a Customer returned supplies, BlueTarp failed to return the Service Fee paid for the Transaction Value of returned supplies. This enabled BlueTarp to cheat its clients by retaining the Service Fee, even though the amount of the transaction was now zero.

26. The contract between BlueTarp and its Dealers does not provide any mechanism by which BlueTarp can retain the Service Fee when the amount of the transaction value is zero.

27. Since 1998, BlueTarp collected and wrongfully withheld millions of dollars in Service Fees for supplies that were returned and credited by Dealers.

28. Upon information and belief, since approximately December 2016, BlueTarp modified its course of conduct related to Service Fees to comply with the PAA. Now, when a Customer returns supplies for a credit, BlueTarp returns the Service Fee it collected on the original transaction. This "Service Fee Credit" is reflected on a monthly Return Fee Details report generated by BlueTarp.

29. BlueTarp has not changed its uniform, pre-printed contract. The PAA has always required a return of the Service Fee when supplies are returned to Dealers.

30. BlueTarp's decision to begin returning the Service Fee proves that the PAA has always required this fee be refunded upon a Customer's return of supplies to a Dealer.

31. Under the plain terms of the PAA, and as shown by BlueTarp's current practice of returning the Service Fee on a monthly basis for returned supplies, BlueTarp has breached its contract with Dealers and unjustly enriched itself by failing to issue the Service Fee Credit during the relevant time period.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this lawsuit as a putative class action on behalf of itself and all others similarly situated as members of the proposed Class(es), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

33. The proposed Class is defined as: All BlueTarp clients in the United States who did not receive a Service Fee Credit that was owed to them ("Class Members").

34. Excluded from the Class are (1) BlueTarp, any entity or division in which BlueTarp has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's staff; and (3) governmental entities.

35. Plaintiff maintains the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, further divided into subclasses, or modified in any other way.

### A. Numerosity

36. As described above, BlueTarp has more than 2,000 clients. It is believed that all of these clients did not begin receiving Service Fee credits until December 2016. The number of potential Class Members is sufficient that joinder is impracticable.

37. The disposition of the claims of these Class Members in a single action will provide substantial benefits and efficiencies to all parties and to the Court. Class Members are readily identifiable from information and records in BlueTarp's possession, custody, or control, and/or can readily self-identify based upon objective criteria.

### B. Typicality

38. Plaintiff's claims are typical of the claims of the Class. Plaintiff failed to receive the Service Fee credit that was owed to it under the PAA for many years.

39. Like all putative Class Members, Plaintiff has been damaged by BlueTarp's misconduct in failing to return the Service Fee in the same manner.

40. The factual bases of BlueTarp's misconduct are common to all Class Members and represent a common course of misconduct that has resulted in injury to all Class Members.

C. <u>Adequate Representation</u>

41. Plaintiff will fairly and adequately represent, and will protect the interests of, the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer and commercial class actions, including breach of contract actions.

42. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

43. Neither Plaintiff nor its counsel has interests adverse to those of the Class.

D. <u>Predominance of Common Issues</u>

44. There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members.

45. Answers to these questions will advance resolution of the litigation as to all Class Members.

46. The common legal and factual issues include, but are not limited to, the following:

a. Whether common written contracts or agreements exist between Class Members and BlueTarp;

b. Whether the contract or agreement between Class Members and BlueTarp was supported by consideration;

c. Whether Class Members performed their obligations under the contract or agreement;

d. Whether BlueTarp returned the Service Fee to Class Members when there were returned supplies from customers prior to December 2016;

e. Whether BlueTarp breached its contracts, including the PAA, by failing to return the Service Fee to Class Members prior to December 2016;

f. Whether BlueTarp breached the contracts related to the Service Fee Credit;

g. Whether BlueTarp breached the contract by failing to communicate to Class Members that they were owed Service Fee Credits;

h. Whether a benefit was conferred to BlueTarp by its failure to issue Service Fee Credits to Class Members;

      i.      Whether BlueTarp had an appreciation or knowledge that it had received a benefit by retaining Service Fees for returned supplies;

      j.      Whether BlueTarp's acceptance of the benefit of the wrongfully held Service Fee was under such circumstances that made it inequitable to retain the benefit.

      k.      Whether BlueTarp retained the money made by failing to return the Service Fee for its benefit;

E.    <u>Superiority</u>

47.    Plaintiff and Class Members have suffered damages as a result of BlueTarp's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.    Absent a class action, most Class Members likely would find the cost of litigating their claims prohibitively high and therefore would have no effective remedy at law.

49.    Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for BlueTarp's misconduct.

50.    Class treatment of common questions of law and fact would be a superior method to multiple individual actions or piecemeal litigation, as

class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

COUNT ONE
(BREACH OF CONTRACT)

51. Plaintiff repeats the allegations contained in paragraphs 1-50.

52. Written contracts, including the PAA and Portfolio Conversion Credit Services Agreement, exist between BlueTarp and Plaintiff and between BlueTarp and other Class Members. These written contracts are valid and enforceable contracts.

53. Plaintiff and Class Members performed their obligations under the contracts.

54. BlueTarp breached the contracts by failing to return the Service Fee to Plaintiff and Class Members following their issuance of credits to Customers for returned supplies.

55. Upon information and belief, BlueTarp ended the practice of failing to return the Service Fee at some point in December 2016.

56. Plaintiff and Class Members have been directly and proximately damaged by BlueTarp's breaches.

WHEREFORE, Plaintiff, on behalf of itself and all Class Members, seeks recovery of all compensatory damages and statutory interest owed to them due to BlueTarp's breach of contract.

## COUNT TWO
## (UNJUST ENRICHMENT)

57. Plaintiff repeats the allegations contained in paragraphs 1-56.

58. As described above, BlueTarp has been unjustly enriched by pocketing Services Fees on returned products and not issuing Service Fee Credits to Plaintiff and all other Class Members.

59. By doing this, Plaintiff and Class Members have unknowingly conferred a benefit to BlueTarp.

60. BlueTarp had knowledge and an appreciation of this deceptive and misleading practice of failing to return the Service Fees rightly owed to Plaintiff and Class Members. It hid its behavior from the Plaintiff and Class Members while profiting from its deception.

61. The retention of this benefit by BlueTarp was under such circumstances as to make it inequitable, unconscionable, and unjust for it to retain the benefit. As the unreturned Service Fee Credits were owed to the Plaintiff and Class Members, it was inequitable for BlueTarp to retain these funds as profit.

62. Plaintiff and Class Members, having been damaged by BlueTarp's conduct and are entitled to recover or recoup damages incurred as a result of the unjust enrichment of BlueTarp to their detriment.

## PRAYER FOR RELIEF

Plaintiff, on behalf of itself and each Class Member, seeks:

(1) an order certifying the proposed class and any appropriate subclasses, and appointing Plaintiff as class representative and Plaintiff's counsel as class counsel;

(2) recovery of actual damages;

(3) recovery of reasonable attorneys' fees and costs to the extent permitted by law; and

(4) all other relief the Court or jury should find appropriate to award.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: April 26, 2018                    Respectfully submitted,

/s/ Richard L. O'Meara
Richard L. O'Meara
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
Phone: 207.773.5651
Fax: 207.773.8023
Email: *romeara@mpmlaw.com*

/s/ Luke Montgomery
Luke Montgomery
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
*luke@montgomeryponder.com*

/s/ J. Bradley Ponder
J. Bradley Ponder
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
*brad@montgomeryponder.com*

Counsel for Plaintiff