UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **BROWN LUMBER AND BUILDING SUPPLY, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**BLUETARP FINANCIAL, INC.,**<br><br>Defendant. | Case No.: **2:18-cv-1173-JDL** |

### ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PRELIMINARY CLASS CERTIFICATION

Plaintiff moves this Court to enter an Order preliminarily certifying a class, for purposes of settlement only, and preliminarily approving the Settlement Agreement[1] between the parties. Plaintiff has consulted with Defendant, which does not oppose this motion for the sole purpose of effecting the settlement. For the reasons shown below, the settlement is fair, reasonable, and adequate, and the settlement class may be properly certified.

### I.  INTRODUCTION

Plaintiff Brown Lumber & Building Supply, Inc. is a small, family-owned building supply company that filed this commercial class action lawsuit against Defendant BlueTarp Financial, Inc. on April 26, 2018. BlueTarp provides credit to clients across the nation.

In a typical transaction, a BlueTarp client ("Dealer"[2]) sells construction supplies to a local customer ("Customer"). BlueTarp finances the transaction for the Customer by paying the Dealer the transaction value of the sale to a Customer, minus a "Discount Fee." BlueTarp then

---

[1] The Settlement Agreement and its accompanying exhibits are attached as Exhibit A. The proposed Preliminary Approval Order is attached as Exhibit B to the Settlement Agreement.
[2] References to "Dealers" in this Motion refers to BlueTarp's clients, including the Plaintiff and putative class members.

attempts to collect the full amount of the purchase price from the Customer through a pre-determined financing agreement. In the past, BlueTarp did not refund the Discount Fee when a Customer later returned a product to the Dealer. Over time, BlueTarp began amending its contracts and/or practices to refund the Discount Fee to the Dealer when a Customer returned a product to the Dealer within thirty-days of purchase.

At issue in this lawsuit is whether BlueTarp's practice of retaining "Discount Fees" on returned supplies is allowed under the operative contracts. Plaintiff alleges that it is not allowed under the contract because BlueTarp is no longer financing the amount of the returned supplies. Thus, BlueTarp is not due the Discount Fee and should return the fee to the Dealers. BlueTarp vigorously contests these allegations and contends that its retention of the Discount Fee following a product return was consistent with the terms of the contract.

Prior to filing suit, Plaintiff's counsel extensively investigated these claims and BlueTarp. This investigation included thoroughly analyzing years of financial reports from the time period BlueTarp retained the Discount Fees and comparing them with approximately 14 months of financial data after Blue Tarp discontinued its practice. Plaintiff's counsel also gathered and analyzed, to the extent available, publicly available financial and sales information regarding BlueTarp. Counsel also conducted interviews to investigate the nationwide scope of BlueTarp's practices and the related damages. Based on this information, Plaintiff's counsel was able to draft the Complaint on behalf of the Plaintiff and putative class.

Following the filing of the Complaint, the parties engaged in informal, arms-length settlement discussions. Following the exchange of correspondence, Plaintiff submitted to BlueTarp requests for several categories of documents. The parties also agreed upon a Confidentiality Order to govern the production of documents. BlueTarp eventually produced over 900 pages of contracts and other agreements with its customers. It has also produced

spreadsheets containing, among other components, the total amount of Discount Fees collected and returned for the relevant time period. These documents allowed Plaintiff's counsel to determine the size of the putative class, the amount of damages per Dealer, and evaluate the merits based on the different versions of contracts signed by members of the putative class. In sum, through their extensive efforts to date, the parties are well-versed in the facts of this case and well-equipped to evaluate the benefits of settlement by providing immediate relief to the putative class and avoiding the risks and costs associated with continued litigation.

Following the review of the documents and initial settlement attempts, the parties agreed to participate in a Judicial Settlement Conference before U.S. Magistrate Judge John Nivison. Arm's length negotiations and a mediation session, overseen by Judge Nivison, followed. After extensive mediated settlement negotiations, Judge Nivison was able to facilitate a settlement between BlueTarp and the putative class, the terms of which are set forth in the Settlement Agreement executed by the parties. (*See* Settlement Agreement, Ex. A).

Plaintiff's counsel has experience in complex cases such as this, and have conducted the discovery and investigation necessary to make an informed evaluation of the proposed settlement. Plaintiff's counsel are of the opinion that the proposed settlement is in the best interest of the class and provides valuable relief in the form of a settlement fund of $600,000. The structure, notice, claims procedure, and relief established in this settlement ensure that it is well-within the bounds of what is fair, reasonable and adequate, that notice is correct under Federal Rule of Civil Procedure 23(e), and that the proposed Settlement Class meets all the requirements for certification for purposes of settlement under Federal Rule of Civil Procedure 23(b)(3).

II. **Preliminary Certification Of The Settlement Class Is Appropriate.**

Plaintiffs respectfully seek, and BlueTarp does not oppose, preliminary certification of the Settlement Class. Preliminary certification allows for notice of the terms of the settlement, the right to be heard, the right to opt out, and the time and place of final approval to be provided to the settlement class. Courts have long recognized class actions as an essential device to resolve disputes involving similar factual or legal issues. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). The interests favoring settlement are particularly supportive of class action settlements, given the inherent costs, delays, and risks involved in such complex litigation. *See, e.g., In re U.S. Oil and Gas*, 967 F.2d at 493 ("Public policy strongly favors the pretrial settlement of class action lawsuits").

"A party seeking class certification must first demonstrate that all requirements of Federal Rule of Civil Procedure 23(a) are satisfied." *Marcoux v. Szwed*, No. 2:15-CV-093-NT, 2016 WL 5720713, at *1 (D. Me. Oct. 3, 2016). The elements for class certification for settlement purposes are the same for certification that is opposed, although courts recognize that problems that may arise during a contested certification are not relevant. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial."). Here, Plaintiff seeks—and Defendant does not oppose—certification of a Settlement Class defined as:

> The Dealers identified in Exhibit C to the Settlement Agreement, which represents all Dealers other than Dealers excluded below that, between April 26, 2012, and the date of Preliminary Approval had Unrefunded Discount Fees as defined in the Settlement Agreement.
>
> Excluded from this Settlement Class are (1) BlueTarp, any entity or division in which BlueTarp has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's staff; (3) all individuals and entities who submit timely and valid requests to be excluded from the Settlement Class pursuant to the terms of this Settlement Agreement and the Court's Preliminary Approval Order; and

(4) Dealers that executed releases of claims against BlueTarp related to Unrefunded Discount Fees prior to the Effective Date.

Plaintiffs seek certification of this class under Federal Rule of Civil Procedure 23(a) and (b)(3). Rule 23(a) provides that certification is appropriate where:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.

Additionally, Section 23(b)(3) provides that certification is appropriate where:

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Plaintiffs will show that each requirement for preliminary certification of the Settlement Class is easily met here.

### A. The Settlement Class Is Numerous.

There is no set number of plaintiffs that results in joinder being impracticable, but an oft-cited benchmark is that class treatment is appropriate when the class exceeds forty members. *See, e.g.* Newberg on Class Actions § 3:12 (5th ed.). "There is no strict numerical test; [t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 24–25 (D. Me. 2013) (citing *Gen. Tel. Co. v. EEOC,* 446 U.S. 318, 329–30, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Carrier v. JPB Enterprises, Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002) (finding numerosity was satisfied where the entire class was comprised of 123 individuals).

Here, joinder is impracticable if not impossible, and numerosity is established. BlueTarp has hundreds of customers nationwide, and evaluation of customer data from BlueTarp's billing and financial system indicates that the Settlement Class includes more than 800 members. The Class size clearly satisfies the numerosity requirement and favors preliminary certification.

### B. Common Questions Of Law And Fact Exist.

Federal Rule of Civil Procedure 23(a)(2) requires that there be either questions of law or fact common to the class. "As this Court has previously noted, where common issues exist which can be resolved in a single forum, thereby avoiding the multiplicity of suits, a class action will 'achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated.'" *Carrier v. JPB Enterprises, Inc.*, 206 F.R.D. 332, 334–35 (D. Me. 2002) (citing *Lessard v. Metro. Life Ins. Co.*, 103 F.R.D. 608, 614 (D. Me. 1984)). "The threshold of commonality is not a difficult one to meet." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005).

Here, the commonality requirement is clearly satisfied. The choice of law provision in BlueTarp's contracts with the class members requires the application of Maine law. This means that all questions of law in this matter, including whether BlueTarp's practice of retaining the Discount Fee following the return of products to a Dealer was allowed under the contract, would be common between the Plaintiff and Settlement Class. Plaintiff and each member of the Settlement Class paid the fees at issue under the same fee programs, calculated pursuant to similar if not identical methodology, and charged under the same terms. Plaintiffs contend that these common practices violated common contractual law, *i.e.*, Maine contractual law. Thus, common issues of fact and law—including if BlueTarp's fee programs are unlawful—pervade the class.

### C. The Plaintiff's Claims Are Typical.

Typicality focuses on the nature of the claims of the class representative, not the specific facts giving rise to those claims. Fed. R. Civ. P. 23(a)(3). "Plaintiffs may establish typicality by demonstrating that the named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) (internal citations omitted); *Venegas v. Glob. Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 99 (D. Me. 2016), *appeal dismissed sub nom. Venegas v. Lufthansa Technik N. Am. Holding Corp.*, No. 16-8006, 2017 WL 3595499 (1st Cir. June 30, 2017) ("Typicality is satisfied when the representative plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory.").

However, typicality does not require identical claims or interests. "The language of 23(a)(3) does not mandate that the claims of the class representative be *identical* to those of class members. Instead, the typicality requirement is satisfied if the representative plaintiff[s'] claims

are based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re New Motor Vehicles Canadian Exp.*, No. MDL 1532, 2006 WL 623591, at *3 (D. Me. Mar. 10, 2006). "The focus in the typicality inquiry is on whether the named plaintiff[s'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *In re New Motor Vehicles Canadian Exp.*, No. MDL 1532, 2006 WL 623591, at *3 (D. Me. Mar. 10, 2006).

Here, Plaintiff's claims are based on the same legal theory and same conduct as those of the class. They were charged the Discount Fees, under the same Discount Fee programs and Discount Fee terms as the other members of the class. The contract terms related to the Discount Fees have changed slightly during over the past six years. However, while not precisely identical, the terms of all the contracts that BlueTarp entered into with class members share the same essential characteristics. No matter the version of the contract, the operative language of the Discount Fee provisions is the same: (1) they define the Discount Fee as a percentage of the transaction value, and (2) they define transaction value as the total amount charged for the product.[3]

Furthermore, the counterclaim that was included in BlueTarp's Answer [Doc. 8] does not defeat typicality since it is based on an entirely separate dispute between the parties. The counterclaim alleges that Plaintiff breached a separate provision of the contract when it moved several credit accounts "in-house" and away from BlueTarp in 2016. Plaintiff's original claims related to the Discount Fee do not overlap at all with this counterclaim and do not preclude Plaintiff from vigorously prosecuting the original claim on behalf the class. The mere filing of a counterclaim in a class action does not defeat typicality since it does not prevent the Plaintiff from advancing and protecting the interests of the Settlement Class. *See Int'l Woodworkers of*

---

[3] The contract provisions related to Discount Fees for 2008, 2013, and 2016 are shown in the attached Exhibit B.

*Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981) (holding that a counterclaim based on the failure to submit to a union grievance procedure "simply does not create the kind of conflict that would defeat commonality, typicality, or prevent this Union from adequately protecting the interests of the class"); *Owner–Operator Indep. Driver Ass'n v. Mayflower Transit, Inc.,* 204 F.R.D. 138, 147 (S.D. Ind. 2001) ("[A] court may consider the potential for a counterclaim and still find the typicality requirement satisfied for class certification purposes."); *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 595–96 (E.D. Cal. 1999) ("The mere existence of a counterclaim does not preclude class certification. Were it otherwise, every motion for class certification would be defeated simply by the vehicle of filing a counterclaim against the named plaintiffs."); *Audio-Video World of Wilmington, Inc. v. MHI Hotels Two, Inc.*, No. 7:09-CV-00039-F, 2010 WL 6239353, at *7 (E.D.N.C. Dec. 8, 2010), *report and recommendation adopted as modified*, No. 7:O9-CV-39-F, 2011 WL 1059169 (E.D.N.C. Mar. 18, 2011) (finding typicality requirement satisfied even where counterclaim would require the Plaintiff "to invest significant time and energy in defending….").

Plaintiff and each member of the Settlement Class have been harmed in the same way: by BlueTarp failing to refund the Discount Fee when a Customer returned a product to the Dealer. The only differences between Plaintiff and class members are in the amount, not type, of damages under the common remedial theory of recovery. Because the Plaintiff and the class assert the same legal theories, and seek the same type of relief for the same injury, the named Plaintiff's interests are materially identical to those of the Settlement Class. Typicality is easily met here.

### D. Plaintiff Will Adequately Protect The Interests Of The Settlement Class.

The adequacy prerequisite requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is satisfied when

the representatives are 'part of the class' and their claims 'arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory.'" *Van Meter v. Harvey*, 272 F.R.D. 274, 283 (D. Me. 2011) (internal citations omitted).

Here, as discussed above, no substantial conflict exists between Plaintiff and the class it seeks to represent. Plaintiff shares the same interests and seek the same relief as all absent class members; no class member has an interest in not recovering the damages sought, and, if Plaintiff succeeds, the benefits will be shared. Second, Plaintiff's attorneys have experience prosecuting class actions and other complex litigation.[4] As such, the interests of the class are more than adequately represented by Plaintiff and its counsel in this case; the requirements of Rule 23(a)(4) are satisfied.

### E. Common Issues Predominate And Superiority Exists.

In addition to the four criteria under Rule 23(a), the requirements of Rule 23(b)(3) also must be satisfied in that (1) common questions of law or fact predominate over individual questions, and (2) a class action is superior to other available methods of adjudication. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. at 205 (D. Me. 2003). "Predominance is satisfied "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Id.*

Predominance is easily satisfied here. As explained above, the claims of the Plaintiff and the Settlement Class arise from BlueTarp's now-discontinued practice related to Discount Fee practices, and in particular, its failure to refund the Discount Fees in certain situations. The focus of this claim is on BlueTarp's contract and actions. Plaintiff alleges that these common fee practices give rise to the same liability common to Plaintiff and class members' claims.

---

[4] Plaintiff's counsel have served as counsel in multiple putative and certified class actions as shown in the attached Exhibit C.

Accordingly, the claims of the class arise from a similar nucleus of operative facts and involve questions of law common to all class members. Individual issues would not overwhelm the common questions.

Moreover, because certification is being sought as part of a settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems...for the proposal is that there be no trial." *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 620 (1997).[5] As there is no trial, but rather meaningful, fair, and reasonable relief to be provided to all class members from a common settlement fund pursuant to a single distribution methodology, any individual liability or damages issues that might have occurred at trial are moot. Accordingly, the common liability questions here are more than sufficient to satisfy the predominance requirement of Rule 23(b)(3) for certification of the proposed class for settlement purposes.

Finally, the proposed resolution of claims across the nation by settlement on behalf of a Settlement Class also satisfies the superiority requirement. Trying the individual claims of hundreds of class members in venues across multiple states would be incredibly costly. Given the costs of pursuing individual actions and the relatively small amounts at stake for most class members, Settlement Class members have little interest in individually controlling the prosecution of separate actions; a fact evidenced by the fact that Plaintiff is aware of no other similar cases that have been filed against BlueTarp to date. To the extent there are potential class members that may wish to pursue their own claims regarding these practices, they have the opportunity to opt out and not be bound by the settlement. Finally, the interests of efficiency and the administration of justice for the Parties and for the judicial system are advanced by proceeding as a single case resolved by class-wide resolution.

---

[5] As set out in the Settlement Agreement, BlueTarp denies any wrongdoing or liability for the claims alleged, and in the absence of a Settlement Agreement and certified Settlement Class, would continue to vigorously defend both class certification and the claims on the merits.

Accordingly, certification of the Settlement Class is appropriate under Rule 23(b)(3).

## III. Preliminary Approval Of The Settlement Is Appropriate.

District courts have broad discretion to approve class action settlements. "[T]he district court enjoys considerable range in approving or disapproving a class settlement, given the generality of the standard and the need to balance [a settlement's] benefits and costs." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009)*; Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000) (noting that an appellant must take "into account the discretion the district judge possesses in implementing Rule 23….").

Preliminary approval of a proposed settlement is the first of a two-step process necessary to settle a class action. First, counsel for the proposed class submits the terms of the settlement and the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and directs notice to class members on the certification, proposed settlement, and date of the final fairness hearing. *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015) (citing *Manual for Complex Litigation, Fourth*, § 13.14, at 173 (2004)). However, this Court has held that at the preliminary stage, the Court should only withhold notice to the class if there is "no chance of approval" of the settlement. "'[I]t makes sense for a judge to say that a particular settlement has no chance of approval' before ordering class notice, but any determination as to a settlement's fairness, reasonableness, and adequacy should be reserved for the fairness hearing." *Michaud v. Monro Muffler Brake, Inc.*, 2015 WL 1206490, at *8 (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 236 F.R.D. 53, 55–56 (D. Me. 2006)). Second, following notice to the class, the court holds a fairness hearing where the settlement proponents must demonstrate

that the proposed settlement is fair, reasonable, and adequate. *Manual for Complex Litigation* § 21.634.[6]

The proposed settlement easily satisfies both the preliminary "peek" as to whether there is a chance of approval and also the final hearing standard, which requires the settlement to be fair, reasonable, and adequate. Fed. R. Civ. Pro. 23(e)(2); *see City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *Id.* "The case law offers 'laundry lists of factors' pertaining to reasonableness, but the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (internal citations omitted).

The proposed settlement in this case bears all the hallmarks of both procedural and substantive fairness such as to warrant preliminary approval and notice to the Settlement Class. First, the Settlement Agreement was the product of extended, arm's length negotiations reached before an experienced mediator and Magistrate Judge Nivison. Judge Nivison has significant judicial experience in complex litigation and has overseen numerous class action settlements that have been granted Court approval. Resolution was reached only after a lengthy mediation session under the direction of Judge Nivison.

Moreover, as outlined above in Section I, the settlement was reached only after significant investigation, but prior to and after the filing of the Complaint, which included

---

[6] This Court has determined that the following factors are relevant for a court evaluating whether to approve a Rule 23 settlement: "(1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; (6) prospects of the case, including risk, complexity, expense and duration." *Scovil v. FedEx Ground Package Sys., Inc.,* No. 1:10–cv–515–DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014).

voluminous document discovery. The parties are each represented by experienced counsel who are well-versed in similar litigation and who, by virtue of their intensive document review, legal research, and experience, understand the risks of continued litigation and the benefits of the Settlement Agreement. Plaintiff and all other class members intend to participate in the Settlement according to a single standard, objective formula that ensures that each class member is returned a fair share of their damages, particularly given the risks and delay of continued litigation. In short, there is nothing about the proposed Settlement that remotely suggests that it might be the product of collusion.

Second, the Settlement Agreement provides for a $600,000 settlement fund from which Settlement Class claimants will receive cash payments. Plaintiff's estimate, from review of the financial data provided and similar litigation, that there is conservatively $2,580,000 in potential damages. Conversely, BlueTarp contends that there are no damages at all; that it had absolutely no contractual duty to return the Discount Fees at issue. Considering BlueTarp's practice of not returning Discount Fees had been ongoing for as long as BlueTarp has been in business and there has been no other litigation related to Discount Fees, the Settlement Agreement represents a significant recovery for the Class Members. The relief afforded by the Settlement is clearly within the range of what is reasonable and fair.

This is particularly true when the immediate and certain benefits are compared to the obstacles that remain to a successful resolution of the litigation. BlueTarp has always vigorously denied liability—including the existence of any damages at all—and contended that Plaintiff's claims could not be certified in an adversarial context. BlueTarp remains confident of its chances of success if this matter were not resolved. Added to the above risks and delay, a jury award may be closer to BlueTarp's damages analysis than to Plaintiff's damages analysis. Continued

litigation through trial and appeal would also invariably reduce the ultimate relief to the class through the costs of that litigation, including expert fees.

The proposed Settlement is the product of hard-fought negotiation and represents valuable relief to the Settlement Class. Plaintiff respectfully submits that preliminary approval is appropriate.

**IV.   The Proposed Notice Is The Best Notice Practicable.**

The parties have agreed to a comprehensive notice plan that satisfies the requirements of Rule 23 and due process. Rule 23(e) provides that, in connection with settlement, "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Rule 23(c)(2) provides that, in the case of a class maintained under Rule 23(b)(3), such as this,

> the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Fed. R. Civ. Pro. 23(c)(2).

Plaintiff respectfully requests that the Court approve the notice plan agreed to by the Parties and set forth in the Settlement Agreement. This notice plan provides for direct notice to class members by sending the Short Form Notice (Exhibit A to the Settlement Agreement) through email and direct mail (for class members where email addresses are not maintained in BlueTarp's records). The Short Form Notice contains all the information required by Rule 23(c)(2)(B) and is clear and easily understood. BlueTarp has retained Rust Consulting, Inc., a well-respected and experienced administrator that has successfully overseen the administration of similar class settlements, to carry out the notice and administration of this Settlement.

The Settlement Administrator will also establish and maintain a class settlement website. The website will contain all important settlement documents, including the Settlement Agreement, and provides no-cost avenues for Class Members to seek additional information or answers to questions not addressed on the website or in the notices.

In sum, the notice plan and notice documents contemplated by the Settlement Agreement go beyond the notice required by Rule 23(c) and ensure that adequate notice is provided to the Settlement Class of this proposed settlement.

## **CONCLUSION**

For the reasons set out above, Plaintiff respectfully requests that the Court enter the unopposed Preliminary Approval Order attached as Exhibit B, which will preliminary certify the Settlement Class, grant preliminary approval of the Settlement, and authorize Notice to the Settlement Class.

Dated: December 20, 2018.                                  Respectfully submitted,

/s/ Richard L. O'Meara
Richard L. O'Meara
MURRAY, PLUMB &MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
Phone: 207.773.5651
Fax: 207.773.8023
Email: romeara@mpmlaw.com

/s/ Luke Montgomery
Luke Montgomery (admitted *pro hac vice*)
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
luke@montgomeryponder.com

/s/ J. Bradley Ponder
J. Bradley Ponder (admitted *pro hac vice*)
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
brad@montgomeryponder.com